```
UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------X     E.D. Bankr. Case
In re:                                  No. 04-87159(MLC)

JOHN BARRY KEATING                      MEMORANDUM AND ORDER
                                        05-CV-5921(JS)
               Debtor.
----------------------------------X
```

APPEARANCES:

For Appellant/Ch. 7 Trustee:   Neil H. Ackerman, Esq.
                               Meltzer, Lippe, Goldstein &
                               Breitstone, LLP
                               190 Willis Avenue
                               Mineola, NY 11501

For Appellee/Debtor:           Stuart P. Gelberg, Esq.
                               600 Old Country Road
                               Garden City, NY 11530

SEYBERT, District Judge:

## INTRODUCTION

Pending before the Court is Chapter 7 Trustee Neil H. Ackerman's (the "Trustee" or "Appellant") appeal from an October 22, 2005 Order ("October Order") of United States Bankruptcy Judge Melanie Cyganowski denying the Trustee's objection to an exemption claimed by Doctor John Barry Keating ("Keating"), the Debtor/Appellee. For the reasons explained below, the Appeal is DENIED and the Bankruptcy Court's Order is AFFIRMED.

## BACKGROUND

Keating is seventy-two years old. Since 1997, he has received treatment for heart disease and prostate cancer. (Bankr. Hr'g Tr. at 56, 74-75.) His medical expenses are substantial. (Id. at 56-57.) In 2002, Keating found himself lacking the financial wherewithal to pay his bills. (Id. at 5, 7, 41.) The

salary from his job as a part-time adjunct professor at the City University of New York, social security benefits, and pension were insufficient to fund his cost of living and medical expenses. (Id. at 41, 74.) Keating retained one substantial asset at this time - a Co-op located in Garden City, New York. (Id. at 78.) He had substantial equity in the Co-op. It was worth between $150,000 and $200,000, and his mortgage was approximately $30,000. (Id. at 11.)

Keating sought financial advice from his cousin, James Ikard ("Ikard"), an insurance agent with the Todd Insurance Group. (Id. at 4, 7.) In the Spring of 2002, Ikard recommended that Keating obtain the opinion of a financial planner, Jarvie Commonweal Service ("Commonweal Service"). In late 2000, Commonweal Service advised Keating that he should file for bankruptcy. (Id. at 8.) Keating then returned to Ikard, and the two developed an alternative plan to address Keating's financial predicament. (Id. at 9-10, 12.) A key component of the plan concerned the disposition of the Co-op. Keating would sell the Co-op and then roll the funds into a financial instrument that would provide for his retirement. (Id. at 10.)

Keating had some difficulty selling the Co-op. In the Spring of 2003, he put the Co-op up for sale. He found a buyer in late July or early August 2003, but the buyer was not approved by the Co-op board. (Id. at 79.) Finally, on April 29, 2004, Keating closed on the sale of the Co-op. (Id.) The net proceeds of the

sale were approximately $123,000. Shortly thereafter, Keating purchased a $117,000 unqualified single premium annuity from American Mayflower Life Insurance Company (the "Annuity"). (Id.) The Annuity would pay Keating $1,321.57 monthly for the rest of his life.

Keating filed for bankruptcy on November 10, 2004. On his Schedule "C," he listed the Annuity as an exempt asset pursuant to New York Debtor and Creditor Law § 283 ("§ 283") and New York Insurance Law § 3212 ("§ 3212"). The Trustee objected to the exemption of the Annuity on the grounds that, inter alia, it was purchased with an actual intent to defraud creditors. The Bankruptcy Court rejected the Trustee's objection and found that the Annuity was exempt. This determination is the basis of the Trustee's Appeal.

The Bankruptcy Court's Order & The Trustee's Appeal

The Bankruptcy Court recognized that Keating purchased the Annuity as part of a plan to keep the proceeds from the Co-op sale beyond the reach of his creditors. (Id. at 89, 94-95.) However, the fact that Keating engaged in pre-bankruptcy planning did not, according to the Bankruptcy Court, compel a finding of actual intent to defraud creditors. The Bankruptcy Court found that Keating's age and medical condition were legitimate reasons supporting the purchase of the Annuity, compromising a finding of actual intent to defraud. (Id. at 94, 100.) The Bankruptcy Court

3

also pointed out the up-front and arms length nature of the annuity purchase. In short, the Bankruptcy Court found that Keating engaged in permissible pre-bankruptcy planning.

While the Trustee cites three "issues presented" in this Appeal, there is really only one for this Court to address. Whether the Bankruptcy Court erred by finding that Keating did not purchase the Annuity with an actual intent to defraud creditors.

<u>STANDARD OF REVIEW</u>

"On an appeal the district court . . . may affirm, modify, or reverse a bankruptcy judge's judgment, order, or decree or remand with instructions for further proceedings." Fed. R. Bank. P. 8013. A bankruptcy court's "finding[s] of fact, whether based on oral or documentary evidence, shall not be set aside unless clearly erroneous . . . ." <u>Id.</u>; <u>see also</u> <u>In re Momentum Mfg. Co.</u>, 25 F.3d 1132, 1136 (2d Cir. 1994); <u>In re PCH Assoc.</u>, 949 F.2d 585, 597 (2d Cir. 1992). "A finding of fact is clearly erroneous when, although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed. . . . Factual findings must be upheld if plausible in light of the record viewed in its entirety. <u>Robbins Int'l, Inc. v. Robbins MBW Corp. (In re Robbins Int'l, Inc.)</u>, 275 B.R. 456, 464-65 (S.D.N.Y. 2002) (internal quotations, citations omitted). A bankruptcy court's legal conclusions are reviewed <u>de</u> <u>novo</u>. See <u>In re Momentum Mfg.</u>

4

Co., 25 F.3d at 1136.

The Bankruptcy Court's determination concerning Keating's actual intent is a finding of fact that is reviewed under the clearly erroneous standard. See In re Bonnanzio, 91 F.3d 296, 302 (2d Cir. 1996) (holding that the district court erred by failing to apply a clearly erroneous standard of review with respect to the bankruptcy court's findings of intent); Eisenberg v. Casale, 72 B.R. 222, 223 (E.D.N.Y. 1987) (applying clearly erroneous standard of review to the bankruptcy court's determination that debtor acted with intent to defraud).

## DISCUSSION

"Section 522 of Title 11 of the United States Code (the "Bankruptcy Code") permits a debtor to exempt certain property from becoming property of the debtor's estate under § 541. . . . New York chose to 'opt out' of the Bankruptcy Code's exemptions. Consequently, Debtor, who is domiciled in New York, is restricted to the exemptions provided by New York State law." In re Maidman, 141 B.R. 571, 572 (Bankr. S.D.N.Y. 1992). The exemptions are listed in New York Debtor & Creditor Law § 282 ("§ 282").[1] The statute provides in pertinent part "an individual debtor domiciled in this state may exempt from the property of the estate . . . insurance policies and annuity contracts and the proceeds and

---

[1] The Trustee correctly points out that the exemption of the Annuity is provided by § 282 and § 3212.

5

avails thereof as provided in section three thousand two hundred twelve of the insurance law." N.Y. Debt. & Cred. Law § 282. Section 283 limits the exemption for certain assets purchased within six months of the debtor's filing of a petition. Id. § 283.

Section 3212(d)(1) provides that payments under an annuity contract are exempt from execution. However, § 3212(e)(2) provides that "the amount of premiums or other consideration paid with actual intent to defraud creditors . . . together with interest on such amount, shall enure to the benefit of creditors from the proceeds of the policy or contract." N.Y. Ins. L. § 3212.

In determining whether there was actual intent to defraud with respect to a transfer, bankruptcy courts typically engage in a "badges of fraud" analysis. Courts consider a wide array of factors depending upon the circumstances of any given case. See In re Kaiser, 722 F.2d 1574, 1582-1583 (2d Cir. 1983) (recognizing "(1) the lack or inadequacy of consideration; (2) the family, friendship or close associate relationship between the parties; (3) the retention of possession, benefit or use of the property in question; (4) the financial condition of the party sought to be charged both before and after the transaction in question; (5) the existence or cumulative effect of a pattern or series of transactions or course of conduct after the incurring of debt, onset of financial difficulties, or pendency or threat of suits by creditors; and (6) the general chronology of the events and

transactions under inquiry" as factors to be considered); In re Robinson, 271 B.R. 437, 441 (Bankr. N.D.N.Y. 2001) (recognizing "(1) whether there was fair consideration paid; (2) whether the debtor was rendered insolvent as a result of the transfer or whether the debtor was insolvent at the time of the transfer; (3) the amount of the transfer; (4) whether there is a genuine purpose for the transfer aside from avoiding creditors; (5) the length of time between the transfer and the filing of bankruptcy; (6) the amount of nonexempt property which the debtor had after the transfer; and (7) the debtor's failure to provide available evidence and to testify with significant preciseness as to the pertinent details of his activities shortly before filing the bankruptcy petition" as factors to be considered). No one factor is controlling.

According to the Trustee, the extrinsic evidence presented to the Bankruptcy Court required a finding that the Annuity was purchased with actual intent to defraud creditors, rendering any proposed exemption inapplicable pursuant to § 3212(e)(2). The Trustee points out that the Bankruptcy Court specifically acknowledged:

> [t]hat the [A]nnuity was purchased at a time when Keating knew by reason of his prebankruptcy planning that he would be seeking to declare the monies exempt. . . . It was his intent that the monies would be placed in an exempt asset. And he knew that as a consequence of being placed in an exempt asset that they would be or his hope would be that it would be beyond the reach of his creditors.

7

(Hr'g Tr. at 95-96.) The Trustee argues that such a statement mandates denial of the exemption independent of any "badges of fraud analysis."

In addition, the Trustee cites to numerous other facts that ostensibly support a finding of Keating's actual intent to defraud creditors, including: the development and execution of the "plan," which preceded Keating's bankruptcy filing by more than a year; Keating's failure to pay any creditors after he believed that he had found a buyer for the Co-op; and Keating's failure to make any attempt to pay off his creditors with the proceeds of the Co-op sale. The Trustee also relies upon the fact that Keating waited six months and four days after he purchased the annuity to file for bankruptcy. The delay allowed Keating to avoid the provisions of § 283, which would have limited the annuity exemption to $5,000 if the Annuity was purchased within six months of the bankruptcy filing. The Trustee also challenges Keating's assertion that he purchased the Annuity to provide for himself. According to the Trustee, any payments pursuant to the Annuity would be "eaten up" by the newly incurred expenses resulting from the sale of the Co-op. While Keating's Co-op only costed him between $200-$300 monthly, his newly obtained apartment cost him $1,450 monthly in rent. The Trustee argues that, such facts are sufficient "badges of fraud" to support a finding that Keating acted with "actual intent" to defraud his creditors.

I.  The Bankruptcy Court's Findings And
    The Trustee's Request For A Per Se Rule

At the outset, the Court rejects the Trustee's assertion that the Bankruptcy Court's findings concerning Keating's motivations for purchasing the Annuity <u>per se</u> require a finding of "actual intent" to defraud.  In <u>In re Adlman</u>, 541 F.2d 999, 1002 (2d Cir. 1976), the Second Circuit rejected such a notion:

> In the case at hand, <u>there is no evidence of any extrinsic fraud committed by the appellant in the payment of premiums on her life insurance policies and the repayment of loans</u>.  Indeed, the Bankruptcy Judge specifically found that appellant made these payments "in order to secure protection for herself and her children." <u>It is true that the Bankruptcy Judge also found that these payments were made "for the purpose of removing such assets from the reach of her creditors" and "with intent to hinder, delay and to defraud her creditors." But it is evident that the Bankruptcy Judge misconceived the law in reaching these conclusions, since nowhere did he find any evidence of fraud other than the mere payments themselves</u>, and his citation of In re Hirsch, supra, was, as we shall see below, reliance on an authority wrongly reasoned.  <u>Absent convincing evidence of extrinsic fraud, it was incorrect as a matter of law for the Bankruptcy Judge to conclude that appellant had actual intent to defraud her creditors</u>.

<u>Id.</u> (emphasis added).  Here, the Bankruptcy Court was confronted with a virtually identical situation.  <u>Adlman</u> makes clear that, where the debtor's "actual intent" is at issue, there is little room for <u>per se</u> rules.  Thus, the determination that Keating's purchase of the Annuity contemplated its exempt status does not, <u>per se</u>, require a finding that Keating acted with actual intent to defraud creditors.

II. <u>The Bankruptcy Court's Assessment Of "Badges Of Fraud"</u>

The Court finds nothing clearly erroneous about the Bankruptcy Court's "badges of fraud" analysis. The determination that Keating was in ill health, and that he purchased the Annuity for a specific purpose - to set aside funds that would provide for his needs in an instrument that would remain outside the reach of creditors - was well supported by the record.

Utilizing available exemptions and engaging in pre-petition planning, without more, is not indicative of actual intent to defraud creditors. See <u>In re Carletta</u>, 189 B.R. 258, 262 (Bankr. N.D.N.Y. 1995) ("The record before this Court does not demonstrate that Debtors had the intent to hinder, delay, or defraud a creditor. Debtors did not engage in sharp dealings, act in a secretive manner or make misrepresentations to creditors. Debtors' pre-bankruptcy planning was not accompanied by concealment or conduct calculated to mislead creditors. . . . It is not unusual for debtors to convert substantially all of their non-exempt assets into exempt property on the eve of bankruptcy. For the Court to render a per se rule that this is sufficient extrinsic evidence for a finding of actual intent to defraud would effectively swallow Code § 727(a)(2)"). Indeed, "[t]he historical purpose of these exemption laws has been to protect a debtor from his creditors, to provide him with the basic necessities of life so that even if his creditors levy on all of his nonexempt property,

10

the debtor will not be left destitute and a public charge." In re Lynch, 321 B.R. 114, 116 (Bankr. S.D.N.Y. 2005); see also H.R. Rep No. 595, 95th Cong. 1st Sess. 361 (1977) ("As under current law, the debtor will be permitted to convert non-exempt property into exempt property before filing a bankruptcy petition. This practice is not fraudulent as to creditors, and permits the debtor to make full use of the exemptions to which he is entitled to under the law.")

In its "badges of fraud" analysis, the Bankruptcy Court relied upon the well reasoned opinions of bankruptcy courts in the Northern District of New York. Both Robinson, and In re Moore, 177 B.R. 437 (N.D.N.Y. 1994), explain that, under certain circumstances a debtor may take pre-petition steps to protect their assets from creditors. The Robinson court recognized that certain badges of fraud were present, but found that, inter alia, the debtors' "genuine purpose for the transfer" and their "forthright . . . testimony, explaining that they had acted on the advice of counsel in seeking to maximize the exemptions to which they were entitled" supported a finding that they did not act with actual intent to defraud. 271 B.R. at 442. The Moore court explained:

> The Court does not find that Debtors' actions rise to the level of fraud. Debtors' pre-bankruptcy planning was not accompanied by concealment or conduct calculated to mislead creditors. Debtors clearly revealed their actions in their bankruptcy petition as well as at the first meeting of creditors. Further, Debtor Leslie Moore's age and medical condition support a finding that the conversion of non-exempt assets was prudent

11

> pre-bankruptcy planning and not done with the intent to defraud creditors. Based on the totality of facts and circumstances presented in this case, the Court concludes that the Trustee has not demonstrated the existence of fraudulent intent on Debtors' part.

177 B.R. at 442-443.

The Trustee suggests that actual intent should be inferred because the Annuity purchase allowed Keating to retain the proceeds of the sale, rather than pay off his creditors. But this circumstance will almost always be present whenever a debtor engages in pre-petition planning in order to provide for their most basic needs. To infer actual fraudulent intent based upon this simple fact would run afoul of the general policy undergirding the exemption provisions, as well as Second Circuit precedent. See supra at 10-11. The Trustee's reliance on the fact that Keating was contemplating his bankruptcy filing for some time before he purchased the Annuity is similarly unpersuasive. The Annuity was purchased with equity in a property that he owned for several years before his financial problems began; there is no indication that the purchase was financed with the creditor's funds.[2] See Adlman, 541 F.2d at 1004 n.7. (contrasting the case before the court with a case where actual intent to defraud creditors might be inferred

---

[2] The Trustee suggests that fraudulent intent may also be inferred because Keating, in August 2003, charged $900 on a newly discovered (it was previously "lost") Citibank credit card in order to pay for dental expenses, but never made any payments. (Hr'g Tr. at 19.) The Bankruptcy Court did not credit this fact as probative of any fraudulent intent. There was nothing clearly erroneous about the conclusion.

and stating, "[i]n the instant case . . . Mrs. Adlman paid the premiums and repaid the loans with money that was derived from an asset which she had owned for many years"). All of the Trustee's remaining objections are without merit.

CONCLUSION

Accordingly, for the foregoing reasons, the Order of the Bankruptcy Court is AFFIRMED and the Trustee's Appeal is hereby DISMISSED.

SO ORDERED

/s/ JOANNA SEYBERT
Joanna Seybert, U.S.D.J.

Dated:    September  18 , 2006
          Central Islip, NY